STELLA M. RUDLOFF, PLAINTIFF *v.* UNITED STATES, ET AL., DEFENDANTS

Court No. 95–01–00002

(Dated October 3, 1995)

*Law Offices of Michael P. Maxwell (Michael P. Maxwell* and *Edith Sanchez Shea)* for plaintiff.

*Frank W. Hunger,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Susan Burnett Mansfield), Senoria K. Clarke,* Office of the Chief Counsel, United States Customs Service, of counsel, for defendants.

## Opinion

RESTANI, *Judge:* This matter is before the court on a motion for judgment upon the agency record by plaintiff Stella M. Rudloff ("Rudloff").[1] Rudloff challenges a decision of the Secretary of the Treasury[2] (or "Treasury") affirming the denial by Customs of her request for credit for a response to a question on the April 4, 1994 Customs broker examination.

## Factual Background

On April 4, 1994, Rudloff sat for the Customs broker examination for the purpose of obtaining a Customs broker license. Rudloff initially received a score of 73, two points below a passing score.[3] She appealed her grade on July 18, 1994, by submitting a written protest to Customs challenging Customs' answers to Questions 33 and 34. Specifically, Rudloff asserted that she had correctly answered both questions and consequently should have received credit for them.

Customs notified Rudloff on August 29, 1994, that her appeal as to Question 33 had been granted and her grade had been raised to a 74. Customs, however, found Rudloff's answer to Question 34 to be incorrect and denied her appeal as to this question, thus effectively denying her a Customs broker license. Rudloff submitted a written appeal to the Secretary of the Treasury on October 26, 1994, protesting Custom's adverse decision. The denial of credit for Question 34 was later affirmed by the Secretary of the Treasury on November 22, 1994. Suit in this court subsequently followed.

## Standard of Review

In accordance with the standard of review set forth in 19 U.S.C. § 1641(e)(3) (1988), a final administrative decision by the Secretary of the Treasury denying a Customs broker's license will be set aside if it is not supported by substantial evidence. *See Bell v. United States,* 17 CIT 1220, 1223–25, 839 F. Supp. 874, 877–79 (1993).

## Discussion

Pursuant to 19 U.S.C. § 1641(b)(2) (1988), the Secretary of the Treasury may require that a customs broker's license applicant

> show any facts deemed necessary to establish that the applicant is * * * qualified to render valuable service to others in the conduct of customs business. In assessing the qualifications of an applicant, the Secretary may conduct an examination to determine the applicant's knowledge of customs and related laws, regulations and procedures, bookkeeping, accounting, and all other appropriate matters.

---

[1] Rudloff's motion for summary judgment was designated a motion for judgment upon the agency record by the court in *Rudloff v. United States,* Slip Op. 95–143, at 9, 10 (Aug. 10, 1995).

[2] Technically, under authority delegated by the Secretary of the Treasury, the Deputy Assistant Secretary of the Treasury decides appeals of denials by the United States Customs Service ("Customs") of applications for Customs broker's licenses.

[3] A passing score on the April 4, 1994 Customs broker examination was a 75. *See* 19 C.F.R. § 111.13(e) (1994).

*Id.* As a general matter, an administrative determination as to the appropriateness of various questions and answers on the Customs broker's licensing examination, will be accorded some deference by the court. *DiIorio v. United States,* 14 CIT 746, 747 (1990) (noting that judicial inquiry into agency's "formulation and grading of standardized examination questions should be limited in scope"). With this in mind, the court turns to plaintiff's challenge to Question 34.

Question 34 requires the examinee to classify a thermometer according to its correct provision of the Harmonized Tariff Schedule of the United States ("HTSUS"). The question reads as follows:

> A thermometer consisting of a clear plastic tube and designed to hang freely by a string is sold as a swimming pool accessory. Due to its unique design, approximately 90 percent of these thermometers are used in pools. Which classification and [General Rule of Interpretation ("GRI")] best apply?
>
> A. 9025.11.40, GRI 3(a)
> B. 9025.11.40, GRI 1
> C. 9506.99.55, GRI 1
> D. 9025.11.20, GRI 1
> E. 9031.80.00, GRI 1

The correct answer, according to Customs, was "C". Item 9506.99.55 of the HTSUS, USITC Pub. 2690, sec. XX, ch. 95, at 95–9 (Supp. 1 1994) [hereinafter "HTSUS"], provides for "[s]wimming pools and wading pools and parts and accessories thereof." GRI 1 provides that "classification shall be determined according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to the [remaining General Rules of Interpretation]." HTSUS, Gen. R. Interpretation 1, at 1. According to Treasury, Note 3 to Chapter 95 establishes the classification of the merchandise described in Question 34. Chapter Note 3 reads: "[P]arts and accessories which are suitable for use solely or principally with articles of this chapter are to be classified with those articles." HTSUS, Note 3, ch. 95, at 95–1. The thermometer described in Question 34 is sold as a swimming pool accessory, and due to its unique design, approximately 90 percent of such thermometers are used in pools. Accordingly, defendants assert, the thermometer is an accessory suitable for use principally with swimming pools under Item 9506.99.55, HTSUS.

Rudloff chose "B" as the correct answer to Question 34. Item 9025.11.40 provides as follows:

> Hydrometers and similar floating instruments, thermometers * * *, recording or not, and any combination of these instruments; parts and accessories thereof:
>> Thermometers * * *, not combined with other instruments:
>>> Liquid-filled, for direct reading:
>>>> \*       \*       \*       \*       \*       \*       \*
>>> Other * * *.

Item 9025.11.40, HTSUS, at 90–22. Applying Additional U.S. Rule of Interpretation ("Additional USRI") 1(a), and Additional USRI 1(c) in arguments raised in the underlying administrative reviews, Rudloff asserts the thermometer described in Question 34 is governed by the principal use of goods of the class or kind to which the imported article belongs, and consequently should be classified under the more specific provision for thermometers, Item 9025.11.40.[4] Rudloff's arguments are without merit.

Rudloff virtually ignores the prefatory statement to the Additional U.S. Rules of Interpretation, that is, "[i]n the absence of special language or context which otherwise requires." Here, Chapter Note 3 clearly indicates that accessories suitable for use principally with articles of Chapter 95, are to be classified with those articles.[5] Chapter Note 3 provides special language or context which precludes application of the Additional U.S. Rules of Interpretation, assuming, *arguendo*, that such rules are otherwise inconsistent with the answer set forth in "C". This supports choice "C" as the best answer to Question 34.

The court also disagrees with Rudloff's claim that Question 34 contains insufficient facts to classify the merchandise under answer "C". Rudloff argues that "[w]ith no other information provided on sales, it would be expected that the thermometers were generally sold as thermometers (except for this *one* importation)." Pl.'s Reply to Defs.' Opp'n to Pl.'s Mot. J. Agency R. at 7. The question states, however, that the thermometer "is sold as a swimming pool accessory * * * [and] approximately 90 percent of these thermometers are used in pools." Under the facts given, the thermometer's principal use is as a swimming pool accessory and one must conclude that it is sold for such a purpose. As "C" was the best answer to Question 34, Rudloff's appeal as to this question was rejected appropriately.

Rudloff also argues that Customs' use of Question 34 was unfair and unreasonable. Specifically, Rudloff asserts that a pre-entry classification ruling by a National Import Specialist, who, under similar facts to Question 34, classified a thermometer under the same HTSUS provision chosen by Rudloff, Item 9025.11.40, establishes the unfairness and unreasonableness of the question. *See* Pl.'s Mot. Summ. J., Ex. D, at 3

---

[4] Additional U.S. Rule of Interpretations 1(a) & (c) read as follows:

In the absence of special language or context which otherwise requires—

(a) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported goods belong, and the controlling use is the principal use;

* * * * *

(c) a provision for parts of an article covers products solely or principally used as a part of such articles but a provision for "parts" or "parts and accessories" shall not prevail over a specific provision for such part or accessory.

HTSUS, Additional USRI 1(a), (c), at 2.

[5] Plaintiff argues that a swimming pool, an "architechtual [sic] structure" made of concrete, is not an "article" within the meaning of Chapter 95, thus the thermometer is not used in conjunction with an "article" under Chapter Note 3. Pl.'s Reply to Defs.' Opp'n to Pl.'s Mot. J. Agency R. at 8. Plaintiff offers no support for this contention, and even admits that there may be other "types of pools" than the one described by plaintiff. Thus, the court declines to employ plaintiff's narrow construction of the term "swimming pool" for purposes of reviewing Customs' answer to Question 34.

(Cust. PC Rul. 867514 (Oct. 31, 1991)). Even though the pre-entry classification ruling was later overruled in a Customs Headquarters ruling, Cust. HQ Rul. 952716 (Mar. 3, 1993), Rudloff argues that (1) requiring an examinee to know one particular Customs ruling of the many issued is unreasonable, and (2) it is unreasonable to require an examinee to arrive at a "purportedly 'better' answer than [a] Customs National Import Specialist specializing in the classification of these articles." Pl.'s Reply to Defs.' Opp'n to Pl.'s Mot. J. Agency R. at 4.

The court disagrees that Question 34 is unfair and unreasonable. An examinee need not know one particular Customs ruling in order to answer Question 34 correctly, but rather must apply the HTSUS provisions and its relevant notes and rules accurately. Question 34 is admittedly a difficult question, because it requires the examinee to scan three chapter notes, all or none of which may be applicable. The entire examination should have questions which vary in difficulty and examinees are permitted 25% errors. Plaintiff's challenge to the examination as a whole, however, has been disallowed on procedural grounds; thus Question 34 must be viewed in isolation. The court cannot say that standing alone the question is inherently unfair. In sum, the court finds the question is fair as it reasonably tests "an applicant's knowledge of customs and related laws, regulations and procedures." 19 U.S.C. § 1641(b)(2). The court finds no error with Treasury's rejection of Rudloff's appeal as to Question 34.

CONCLUSION

For the foregoing reasons, the court finds that the Secretary of the Treasury properly rejected Rudloff's appeal as to Question 34 of the April 4, 1994 Customs broker's license examination. The Secretary's determination is sustained.